IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT LANYON,

    Plaintiff,

v.

INTERFOR U.S. INC., dba INTERFOR PACFIC INC.,

    Defendant.

Case No. 1:16-cv-2058-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff Robert Lanyon ("Lanyon") alleges he was the subject of discrimination, retaliation, and a hostile work environment during his employment with defendant Interfor Inc. ("Interfor). Interfor moves for summary judgment. Because there are genuine issues of material fact regarding the hostile work environment and retaliation claims, but not the age discrimination claim, Interfor's motion (ECF No. 28) is GRANTED in part and DENIED in part.

## BACKGROUND[1]

On August 23, 2013, Interfor hired Lanyon, then 40 years old, as a Stacker Operator on the swing shift at its Gilchrist sawmill. Interfor employs approximately 150 employees at the Gilchrist location. On May 14, 2014, Interfor transferred Lanyon to the day shift under the supervision of Gene Smith ("Smith"). Decl. of John David Burgess ("Decl. of JDB"), Ex. A at 4, ECF No. 37. The month following, on June 18, 2014, Interfor moved Lanyon to the planer

---

[1] I view the facts in the light most favorable to Lanyon, the non-moving party.

1 – OPINION AND ORDER

operations and Lanyon began working as a Moulder Setup Person. On November 4, 2014, Interfor promoted Lanyon to Senior Planer Operator. Decl. of JDB, Ex. A at 5.

On October 11, 2011, Interfor hired Thomas Phillips ("Phillips") as a stacker operator during the day shift. On April 27, 2013, Interfor promoted Phillips to a lead role. On September 2, 2014, Interfor promoted Phillips to sawmill supervisor. Decl. of JDB, Ex. B at 3.

Throughout Phillips's tenure, multiple employees, including Lanyon, alleged that Phillips engaged in improper behavior. *See* Decl. of JDB, Ex. C at 108-12. Lanyon claims that Phillips touched him inappropriately on numerous occasions. He claims that Phillips touched his buttocks, that Phillips put his hands down Lanyon's pants, that Phillips blew in his ear, and that Phillips tried to touch his genitals by putting his hands in Lanyon's pockets. Decl. of JDB, Ex. C at 108. Lanyon alleges that this behavior occurred "all the time" and it did not cease even after Lanyon moved from the sawmill to the moulder. Decl. of JDB, Ex. C at 108-09. Phillips frequently threatened to physically harm Lanyon, including an incident where Phillips threatened to throw Lanyon over a hand rail. Decl. of JDB, Ex. C at 79, 117-18.

Lanyon insists that he complained to his supervisors on numerous occasions and that supervisors observed Phillips's inappropriate conduct yet failed to remedy the situation. *See* Decl. of JDB, Ex. C at 53. Phillips agreed that supervisors observed him engaging in the behavior alleged, but contends his behavior was "clowning around." Decl. of JDB, Ex. C at 110-11. Smith, a former supervisor of Lanyon, admitted that he counseled Phillips regarding his behavior. Decl. of JDB, Ex. C at 50-51.

Although Phillips admits to engaging in inappropriate conduct throughout his employment, Interfor did not discipline him until its Human Resources Department ("HR") received a complaint from Johnathan Shelley ("Shelley") on July 15, 2015. *See* Decl. of

2 – OPINION AND ORDER

MacKinlee Reed ¶ 2, ECF No. 29. Within a week of receiving Shelley's complaint, Interfor fired Phillips. Decl. of MacKinlee Reed ¶ 2.

Within a month of Phillips being terminated, Interfor terminated Lanyon. Decl. of JDB, Ex. A at 6, ECF No. 37. Prior to his termination, on March 10, 2015, Interfor suspended Lanyon and placed him on a Last Chance Agreement ("LCA") for behavior involving playing with a remote control truck and the mill and leaving work during a shift without clocking out. Decl. of Caroline Livett, Ex. 1 at 30, ECF No. 33. The LCA explicitly stated that Lanyon would be dismissed within a twelve-month period for a "further violation of *any kind*." Decl. of Caroline Livett, Ex. 1 at 30 (emphasis in original). Before his termination, Interfor laid Lanyon off along with several other employees. Decl. of Greg Duncan ¶ 5, ECF No. 32. Interfor states that Lanyon was included in these layoffs because of his disciplinary issues and recent placement on a LCA. Decl. of Caroline Livett, Ex. 3 at 4, ECF No. 33. Interfor informed Lanyon that his layoff was likely to be temporary. Decl. of Alan Day ¶ 4, ECF No. 31.

One day after being laid off, Lanyon admitted to confronting Steve Thomas ("Thomas"), the Production Superintendent. Decl. of JDB, Ex. C at 17-18, ECF No. 37. The confrontation took place away from work and Thomas stated that he feared for his safety. Decl. of Caroline Livett, Ex 4 at 4-7, ECF No. 33. Interfor terminated Lanyon, effective August 6, 2015. Decl. of JDB, Ex A at 6, ECF No. 37.

On April 13, 2016 Lanyon filed a charge of employment discrimination with the Oregon Bureau of Labor and Industries ("BOLI"). Compl. ¶ 4, ECF No. 1. BOLI issued a right to sue letter on August 4, 2016. Compl. ¶ 4. On October 26, 2016, Lanyon filed this complaint.

**STANDARDS**

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I. Age Discrimination**

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to fire an employee because of age. 29 U.S.C. § 623(a)(1) (2012). This applies with equal force at the state level. Or. Rev. Stat. § 659A.030(1)(a) (2017). Age discrimination claims are analyzed under a "but for" standard, meaning that a plaintiff must establish that age was the "but for" cause of the adverse employment action taken against the plaintiff. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).[2] In meeting this burden, a plaintiff may present either

---

[2] Although the parties disagree on the standard, Oregon modeled its employment statute after Title VII, signifying that both federal and state claims are analyzed under a "but for" standard. *Richardson v. Northwest Christian Univ.*, 242 F. Supp. 3d 1132, 1146 (D. Or. Mar. 16, 2017); *see also Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*, 977 F. Supp. 2d 1058, 1061 (D. Or. Oct. 15, 2013) ("The Oregon Court of Appeals . . . has described [their] causation standard as a 'but for' test.").

direct or circumstantial evidence of age discrimination. *Id.* at 177-78. Here, the parties agree that Lanyon failed to provide any direct evidence that age was the "but for" cause of his termination and that he instead relies upon circumstantial evidence.

ADEA claims utilizing circumstantial evidence are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green ("McDonnell Douglas")*, 411 U.S. 792, 802-804 (1973). First, the employee must establish a *prima facie* claim of discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). To establish a *prima facie* case, an employee must show that: (1) he belongs to a protected class; (2) he was performing his job satisfactorily; (3) he was subject to an adverse employment action; and (4) he was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). The "degree of proof" required for a *prima facie* age discrimination claim is minimal. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The requisite degree of proof necessary to establish a *prima facie* case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence."). If plaintiff can establish a *prima facie* claim, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action taken against the employee. *Diaz*, 521 F.3d at 1207. If the employer articulates a legitimate, nondiscriminatory reason for termination, the employee must then offer evidence that the employer's proffered reason for taking the adverse action was a pretext for discrimination. *Id.*

Interfor disputes that Lanyon established a *prima facie* claim of age discrimination, specifically arguing that Lanyon failed to meet prongs two and four of his *prima facie* claim. I disagree. As noted, Lanyon's burden here is minimal. *Wallis*, 26 F.3d at 889. Beginning with

5 – OPINION AND ORDER

prong two, even though Lanyon was on a LCA and Interfor views this as unsatisfactory performance, it is not improper to make an inference that Lanyon's deficiencies in performance "were relatively minor and infrequent." *See Diaz*, 521 F.3d at 1208 (determining that despite plaintiff's prior incidents, which included damaging company property and violating a company safety rule, that he still met the burden for element two because it could be inferred that his deficiencies in performance "were relatively minor and infrequent"). Turning to prong four, Lanyon meets this burden because he trained a much younger employee who ultimately replaced him after being terminated.[3] Decl. of JDB, Ex. C at 128-29, ECF No. 37. When viewing the evidence in a light most favorable to Lanyon and "because very little evidence is required to establish a *prima facie* case," Lanyon met his initial burden. *Wallis*, 26 F.3d at 891.

Since Lanyon has established a *prima facie* claim, the burden now shifts to Interfor to offer a legitimate, nondiscriminatory reason for Lanyon's termination. "To suffice under *McDonnell Douglas*, an employer's explanation must explain why the plaintiff 'in particular' was laid off." *Diaz*, 521 F.3d at 1211.

Interfor offers such an explanation by asserting that Lanyon's termination was based on insubordination at work and threatening Thomas offsite. Specifically, Interfor placed Lanyon on the LCA after Lanyon broke several rules around March 4, 2015 and March 5, 2015. Decl. of Alan Day, Ex. A at 1, ECF No. 31. First, Lanyon left the mill for an hour without clocking out or telling anyone he was leaving. Decl. of Alan Day ¶ 3. Upon returning, Lanyon's lead caught Lanyon playing with a remote controlled truck during work hours. Decl. of Alan Day, Ex. A at 2. After the lead left, and despite the lead ordering Lanyon to take the toy home, Lanyon continued

---

[3] The parties disagree on whether the younger employee replaced Lanyon or if Lanyon's shift essentially disappeared with the reduction in force. As discussed below, even assuming Lanyon was replaced by the younger employee, his age claims fail.

6 – OPINION AND ORDER

playing with the toy truck. Decl. of Alan Day, Ex. A at 2. Interfor then placed Lanyon on the LCA. Decl. of Greg Duncan ¶ 4, ECF No. 32. Months later, in August of 2015, Lanyon's supervisor Thomas informed him that he was being laid off. Decl. of Caroline Livett, Ex. 4 at 4, ECF No. 33. Lanyon was told that he was among the employees selected because of his placement on the LCA. Decl. of Caroline Livett, Ex. 4 at 4; Decl. of Greg Duncan ¶ 5, ECF. No. 32. The day after being laid off, Lanyon confronted his supervisor outside of work. Decl. of Caroline Livett, Ex. 4 at 4, ECF. No. 33. The supervisor smelled alcohol on Lanyon's breath and stated he feared for his safety and the safety of his family. Decl. of Caroline Livett, Ex. 4 at 5-6. While Lanyon disputes threatening the supervisor, he admits trailing closely behind the supervisor's vehicle while flashing his lights, and engaging in an "awkward" conversation with the supervisor on the side of the road. Decl. of JDB, Ex. C at 50, ECF No. 37. Interfor terminated Lanyon the day after his offsite confrontation with Thomas. Decl. of Greg Duncan ¶ 6, ECF No. 32. An employer's subjective belief that an employee's performance is inadequate and inappropriate is a legitimate, nondiscriminatory reason for terminating an employee. *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003). Consequently, the analysis turns to step three.

The final step of the *McDonnell Douglas* analysis requires Lanyon to raise a genuine issue of fact concerning whether the facially legitimate reasons proffered by Interfor are merely pretextual. *Coleman*, 232 F.3d at 1281. Lanyon may demonstrate pretext "either directly by persuading the court that a discriminatory reason likely motivated [Interfor] or indirectly by showing that [Interfor's] proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001) (internal quotations and citations omitted).

Interfor argues that Lanyon fails to present specific and substantial evidence that Interfor's explanation is merely pretext. I agree. Lanyon correctly states that when circumstantial evidence "consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment." *Schnidrig v. Columbia Mach.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

However, the key point from *Schnidrig* is that Lanyon's claim must consist of more than the *McDonnell Douglas* presumption. *See Wallis*, 26 F.3d at 890 ("[W]hen evidence to refute defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on *McDonnell Douglas* type presumption."). In *Schnidrig*, the plaintiff was able to establish discriminatory intent by pointing to multiple allegations of supervisory employees discussing age when making employment decisions. *Schnidrig*, 80 F.3d at 1410. Dissimilarly, there is nothing in the record indicating that Interfor's employment decisions were motivated by age.

Lanyon encourages me to make an inference that because he was replaced by a younger employee, Interfor discriminated against him due to age.[4] Critical to Lanyon's claim, merely expressing a belief that an employer's actions are improper without providing additional evidence supporting that belief is not enough to present a triable issue of material fact. *Carmen v.*

---

[4] Lanyon also argued that other employees who were within the same protected class as him were laid off and replaced by younger employees because of age discrimination. Interfor contended that this argument was misleading and irrelevant to Lanyon's age discrimination claim because the employees referenced were terminated during a different round of layoffs. Decl. of Caroline Livett in Supp. of Def.'s Mot. for Summ. J. ¶ 4, Ex. 3 at 2, ECF No. 46. Regardless of timing and relevancy concerns, the other layoffs only support Lanyon's *prima facie* case of age discrimination. Similar to his own case, Lanyon mentions the other employees' ages and subsequently encourages an inference that this indicates age discrimination. However, without more information from Lanyon establishing that these employees were similarly situated to him, Interfor terminating these other employees does not establish a genuine issue of material fact for trial. *See McDonnell Douglas*, 411 U.S. at 804 ("Especially relevant to [a showing of pretext] would be evidence that a white employee involved in acts against [the employer] of comparable seriousness . . . were nevertheless retained or rehired.").

8 – OPINION AND ORDER

*San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (affirming grant of summary judgment and explaining that "[a] plaintiff's belief that [his or her employer] acted from an unlawful motive, without evidence supporting that belief, is no more than speculation"); *see also Rogers v. Oregon Trail Elec. Consumers Coop., Inc.*, No. 3:10-CV-1337-AC, 2012 WL 1635127, at *11 (D. Or. May 8, 2012) ("The actual motivation of the employer, not the subjective belief of the employee, is all that is relevant in an employment discrimination case . . . ."). Other than a minimal inference of discrimination because of Lanyon and his replacement's age, the record is devoid of additional evidence indicating age discrimination.

Because Lanyon does not point to any evidence that Interfor's legitimate, nondiscriminatory reasons for terminating him were merely a pretext for discrimination, his age claims fail. Interfor's motion for summary judgment on Lanyon's age discrimination claims is therefore GRANTED.

## II. Retaliation

Claims for retaliation are subject to the same *McDonnell Douglas* burden-shifting analysis as discrimination claims. To establish a *prima facie* claim for retaliation, an employee must establish: (1) his involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 970. Finally, the employee must offer evidence that the employer's proffered legitimate, nondiscriminatory reason for the alleged adverse employment action is a pretext for retaliation. *Id.*

An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected

9 – OPINION AND ORDER

activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000). In establishing a causal link between the protected activity and adverse employment action, an employee must prove the employer's "desire to retaliate was the [but for] cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013). Causation may be inferred from timing when "an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Interfor argues that Lanyon failed to state a *prima facie* case of retaliation, specifically contending that Lanyon cannot meet prongs one and three. I disagree.

Beginning with prong one, Lanyon stated that he made multiple complaints to co-workers and supervisors about Phillips's inappropriate conduct. Interfor counters that Lanyon never participated in a protected activity because, even if Lanyon did complain, he failed to follow proper procedure and never put Interfor on notice. However, complaining about sexual harassment is protected activity. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Moreover, Lanyon was not required to follow proper protocol established by Interfor to participate in a protected activity; informal complaints to supervisors will suffice. *Passantino v. Johnson & Johnson Consumer Prods. Inc.*, 212 F.3d 493, 506-07 (9th Cir. 2000). Lanyon insists that he complained to multiple individuals on a regular basis. Although Lanyon might not have followed the procedure established by HR and his supervisors may not have taken his complaints seriously, his informal complaints still constituted a protected activity. Additionally, Lanyon points to evidence that, viewed in the light most favorable to Lanyon, Interfor was aware of Phillips's alleged harassment of virtually every employee Phillips came into contact with. Decl. of Chancy Hull ¶ 2, ECF No. 39; Aff. of Ian Maxwell ¶ 12, ECF No. 40; Decl. of John Seits ¶ 9, ECF No. 41; Decl. of Steven Faith ¶ 7, ECF No. 42; Decl. of JDB, Ex. L at 10, ECF No. 37; *see*

10 – OPINION AND ORDER

*also* Decl. of JDB, Ex. K at 12-13, 16 ("I was never aware this was such a big deal because the people that I was learning from and that were telling me I was doing a great job *were standing there when all this was happening*.") (emphasis added).

Turning to prong three, Interfor contends that Lanyon is unable to show a causal link between his protected activity and the adverse employment action taken against him. In response, Lanyon focuses on the timing between his alleged complaints and subsequent termination. This circuit has held that an inference of causation may arise from proximity in time between the protected activity and adverse employment action. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Villiarimo*, 281 F.3d at 1065 (recognizing that "causation can be inferred from timing alone"). Beyond asserting that Lanyon engaged in protected activity mere months before being laid off and terminated, Lanyon also points to other employees who participated in similar activity and were later fired. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 33. These additional factors differentiate Lanyon's retaliation claims from his age claims.

When viewing the evidence above in the light most favorable to Lanyon, he has met his burden of demonstrating that the alleged reasons proffered by Lanyon for terminating him were pretextual; that the real reason centered on his complaints about Phillips's alleged harassment. There is certainly strong evidence to the contrary. Similar to the defendant's argument on the age discrimination claims, Interfor proffers legitimate, nondiscriminatory reasons for terminating Lanyon's employment; namely, his insubordination and confrontation with Thomas. However, a reasonable trier of fact could find, for example, that Interfor decided to fire Lanyon and other individuals who complained about Phillips to clean house. This presents a genuine issue in which

a reasonable jury may rule in Lanyon's favor. *Rivera*, 395 F.3d at 1146. Therefore, Interfor's motion for summary judgment regarding the retaliation claims is DENIED.

**III. Hostile Work Environment**

A plaintiff in a hostile work environment claim must show: (1) that he was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To determine whether conduct was sufficiently severe or pervasive, we consider the totality of the circumstances, "including the frequency of the discriminatory conduct; the severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[ed] with an employee's work performance." *Id.* "The working environment must both subjectively and objectively be perceived as abusive," and the objective analysis is done "from the perspective of a reasonable" male. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Lanyon's state and federal claims utilize the same analysis. *Dawson v. Entek*, 630 F.3d 928, 935 (9th Cir. 2011).

Lanyon argues that Interfor's failure to end Phillips's harassment created a hostile work environment which negatively impacted his ability to do his job. Interfor contends that Lanyon could not have suffered at the hands of Phillips because they worked in different departments. Interfor further contends that they cannot be held liable for Phillips's harassment because Lanyon failed to properly report it.

I am not persuaded by Interfor's arguments. First, debate over whether or not Lanyon was subject to Phillips's behavior because of their respective physical locations in the mill is a material fact for a jury to decide. The standard for a hostile work environment claim is whether

12 – OPINION AND ORDER

an objectively hostile environment exists and whether the employee subjectively believes that the work environment is hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). What is apparent from the record is that Phillips admitted misconduct and Lanyon claims he was victimized by this behavior, regardless of whether he was working at the sawmill or the moulder. Additionally, Lanyon produced evidence that after Phillips transferred to the moulder area, Lanyon still came in contact with Phillips and harassed Lanyon. Decl. of JDB, Ex. C at 6, ECF No. 37. Viewed in the light most favorable to Lanyon, Phillips repeatedly threatened to rape and sodomize Lanyon. Decl. of JDB, Ex. C at 38-41. Phillips repeatedly attempted to grab Lanyon's genitals. Decl. of JDB, Ex. C at 27. Lanyon was physically threatened by Phillips. Decl. of JDB, Ex. C at 36-37.Whether Lanyon viewed this behavior as mere "clowning around" is a question for the jury.

Second, Interfor's defense that they cannot be held liable because Lanyon failed to properly report Phillips is unpersuasive. Interfor points to *Martinez v. Colvin*, No. 3:14-CV-01487-AA, 2016 WL 8737442 (D. Or. Mar. 4, 2016) to support its assertion that it is not liable. In *Martinez*, the female plaintiff was subjected to numerous unwanted advances from a co-worker. *Id.* at *1. However, she did not complain about the harassment until four years after it started. *Id.* Once she complained to her employer, she was offered a new working space to separate her from her harasser and her employer conducted a thorough investigation. *Id.* at *1-2. Judge Aiken granted summary judgment for the defendant because "plaintiff failed to notify any supervisor about [her co-worker's] conduct and took no action to address the alleged harassment for over four years." *Id.* at *4.

Conversely, viewed in the light most favorable to Lanyon, the record indicates that Lanyon and other co-workers constantly complained about Phillips's conduct. Moreover, Phillips

13 – OPINION AND ORDER

admitted that he acted inappropriately in front of his immediate supervisors, while also holding a supervising role himself. Decl. of JDB, Ex. K at 16, ECF No. 37.Hostile work environments created by supervisors deserve more scrutiny. *Zetwick v. County of Yolo*, 850 F.3d 436, 445 (emphasizing "the potentially greater impact of harassment from a supervisor"). Although Interfor argues that their response was prompt after HR received Shelley's complaint, the record indicates that knowledge of Phillips's behavior likely permeated the entire sawmill. *See Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986) ("Finally, we reject [the] view that the mere existence of a grievance procedure and a policy against discrimination, coupled with respondent's failure to invoke that procedure, must insulate petitioner from liability.").

"An employer may be held liable for creating a hostile work environment either vicariously (i.e., thorough the acts of a supervisor) or through negligence (i.e., failing to correct or prevent discriminatory conduct by an employee)." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 688 (9th Cir. 2017). "In the absence of grounds for imposing vicarious liability, an employer is liable for a hostile work environment claim if the employer 'knew, or should have known, about the harassment and failed to take prompt and remedial action.'" *Id.* at 689 (quoting *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010)). Here, while viewing the evidence in the light most favorable to Lanyon, Phillips's behavior appeared to be common knowledge known among Interfor's employees and supervisors. Despite this, Interfor did not act until receiving Shelley's complaint.

The record establishes that a reasonable trier of fact may find that Interfor knew about Phillips's misconduct and responded inadequately. Therefore, Interfor's motion for summary judgment on hostile work environment claims is DENIED.

## IV. Damages

### A. Economic Damages

Interfor contends that Lanyon is barred from recovering any back pay or future lost wages after Interfor discovered that he had left his prior employment at Duck Delivery off of his application. Interfor cites their policy that potential employees are required to disclose their entire employment history and insists that an omission would lead to automatic termination. Decl. of Caroline Livett, Ex. 1 at 5, ECF No. 33; Decl. of Wendy St. Claire ¶¶ 2-3, ECF No. 30.

"An employer can avoid back pay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can *prove by a preponderance of the evidence* that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996) (emphasis added). For Interfor to avail itself to this defense, it must establish that not only could they have fired Lanyon, but that they would have done so. *Id.* at 759.

When viewing the evidence in a light most favorable to Lanyon, it would be improper to grant summary judgment regarding economic damages. Although Interfor has both a policy and declaration from Wendy St. Claire, Director of HR, ensuring that they would have terminated Lanyon for this transgression, the evidence in the record indicates that a reasonable trier of fact may find that Interfor fails to follow their own policies in a multitude of areas. Coupled with the fact that Interfor has failed to present evidence that they have fired an employee for omitting past employment history, Interfor's motion for summary judgment on economic damages is DENIED.

**B. Non-Economic Damages**

Interfor also argues that statements made by Lanyon during his deposition prohibit him from being awarded non-economic damages. I disagree. Viewing the evidence in a light most favorable to Lanyon, a reasonable trier of fact may determine that Lanyon was confused about the questions being posed to him and the impact they had on his case[5]. Further, a reasonable trier of fact may determine that the stress, humiliation, and embarrassment associated with Phillip's behavior entitles Lanyon to non-economic damages. Based on these reasons, Interfor's motion for summary judgment on non-economic damages is DENIED.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 28) is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

DATED this 26th day of April, 2018.

                                                _____/s/ Michael J. McShane_____
                                                          Michael McShane
                                             United States District Judge

---

[5] Interfor is, of course, entitled to cross examine Lanyon about his answers to questions posed during his deposition and then make arguments during closing about Lanyon's noneconomic damages.

16 – OPINION AND ORDER